UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARIA WETZSTEIN,

                              Plaintiff,

v.                                                      5:05-CV-0300
                                                                        (GHL)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

OFFICE OF FRANK A. CLARK                   FRANK A. CLARK, ESQ.
Counsel for Plaintiff
One Park Place
300 South State Street, Suite 350
Syracuse, New York 13202

HON. GLENN T. SUDDABY                      WILLIAM H. PEASE, ESQ.
United States Attorney for the                  Assistant United States Attorney
 Northern District of New York
Counsel for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER[1]

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff filed an application for disability insurance benefits on June 24, 2002.

(Administrative Transcript ("T") at 47-50.)  The application was denied and Plaintiff requested a

---

       [1]      This matter is before the Court by consent of both parties.  (Dkt. No. 18.)

hearing before an Administrative Law Judge ("ALJ") which was held on September 8, 2004.  (T. at 231-263.)  On October 27, 2004, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 14-20.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 3, 2005.  (T. at 5-7.)  Plaintiff commenced this action on March 9, 2005.  (Dkt. No. 1.)

    **B.**    **The Contentions**

Plaintiff makes the following claims:

(1)    The ALJ's determination at step four of the sequential evaluation is erroneous and not supported by substantial evidence.  (Dkt. No. 5 at 23-28.)

(2)    The Commissioner's finding regarding Plaintiff's residual functional capacity ("RFC") is erroneous and not supported by substantial evidence.  (Dkt. No. 5 at 16-22.)

(3)    The ALJ erred at step five of the sequential evaluation by using the Medical-Vocational Guidelines (the "Grid").  (Dkt. No. 5 at 29-32.)

(4)    This matter should be reversed and remanded solely for the calculation of benefits.  (Dkt. No. 5 at 33-34.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  Dkt. No. 11.

**II.**    **APPLICABLE LAW**

    **A.**    **Standard for Benefits**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[]  If the claimant survives the fourth stage, the fifth, and

> final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

> **B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.    THE PLAINTIFF**

Plaintiff was born on December 8, 1947. (T. at 48.) She graduated from high school, attended one and a half years of college, and went to nursing school, obtaining her license as a licensed practical nurse ("LPN"). (T. at 235.) She previously worked as a LPN, counselor, financial information services operator, and office assistant. (T. at 58, 64.) Plaintiff alleges disability due to, among other things, right third cranial nerve palsy. (Dkt. No. 5 at 2, T. at 56-65.)

**IV.	THE ALJ'S DECISION**

The ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since December 21, 2001 (T. at 19); (2) Plaintiff had severe impairments but none, singly or in combination, met the criteria of a listed impairment (*Id.*); (3) Plaintiff's allegations of disabling impairments were not supported by the medical evidence of record (*Id.*); (4) Plaintiff had the RFC to perform medium work, except, due to her impaired vison, she was unable to perform those activities that require depth perception or binocular vision or useful field of vision to the right temporally.  The ALJ specifically found that Plaintiff could read, write, sort, operate a keyboard, work with instruments, monitor video screens, and "do other activities up to four hours in a workday without left eye strain and/or headaches."  (T. at 18, 19.)  The ALJ further found that Plaintiff should avoid heights and moving machinery (T. at 19); (5) Plaintiff could resume her past relevant job as a financial information services operator and/or office assistant; and (6) in the alternative, using the Grid as a framework, Rule 203.07 dictated a finding of not disabled (T. at 20).

**V.	DISCUSSION**

**A.	Did the ALJ Properly Find That Plaintiff Could Perform Her Past Relevant Work?**

The ALJ found that Plaintiff was able to perform her prior relevant work as a financial information services operator and/or an office assistant.  (T. at 18.)  With regard to her position as a financial information services operator, Plaintiff contends that she cannot perform this past relevant work due to the restrictions set forth in Dr. Oplinger's affidavit.  (Dkt. No. 5 at 27-28.) With regard to her office assistant position, Plaintiff argues that the ALJ erred in considering this

as past relevant work because she worked as an office assistant more than fifteen years before the date the ALJ adjudicated her claim. (Dkt. No. 15.)

### 1. Financial Information Services Operator

At step four of the sequential evaluation, the burden of proof lies with the Plaintiff to show that she cannot perform her past relevant work. She may make such a showing by either demonstrating that she cannot perform the functional demands and job duties particular to an individual job as she performed it or that she cannot perform the functional demands and job duties of a job as ordinarily required by employers throughout the national economy. *Jock v. Harris*, 651 F.2d 133 (2d Cir. 1981), *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003), and SSR 82-61. Accordingly, it was incumbent on Plaintiff to show that she could not perform her job as a financial information services operator. In the alternative, it was incumbent on Plaintiff to show that she could not perform the job as it is customarily performed throughout the national economy.

To sustain her burden of proof, Plaintiff proffered evidence from Dr. Oplinger, who stated that Plaintiff could perform certain job related activities (e.g., reading, writing, sorting, operating a keyboard, working with instruments, monitoring video screens, and performing similar activities) for up to four hours in an eight hour period. (T. at 230.) Dr. Oplinger further opined that "[p]erforming these activities, singly or in combination, for more than 4 hours in an 8-hour period produces left eye strain and headache." (*Id.*) In a very literal sense, Plaintiff has not entirely met her burden of proof because Plaintiff has not shown that she cannot perform her past relevant work; she has merely shown that after four hours of performing work related activities, left eye strain and headache result. In other words, Dr. Oplinger's opinion could be

interpreted as saying that the four hour limitation is not an absolute limitation on the number of hours that Plaintiff may work in a day, but rather a limitation on the number of hours that Plaintiff may work prior to experiencing left eye strain and headache.

On the other hand, it could be argued that Plaintiff has indeed met her burden of proof at step four of the sequential evaluation. Her burden was to show that she could not perform her past relevant work as a financial information services operator and she met this burden by proffering Dr. Oplinger's affidavit which stated that Plaintiff could only perform four hours of work related activity before the onset of left eye strain and headache. Since her prior relevant job as a financial information services operator required her to "[w]rite, type or handle small objects" for six hours each day, she could not perform her past relevant work because she could only work for four hours before becoming symptomatic.

Whether Plaintiff met her burden of proof or not depends completely on how Dr. Oplinger's affidavit is interpreted. Unfortunately, the ALJ did not explain how he reached his conclusion that Plaintiff could perform her past relevant work as a financial information services operator. He accorded Dr. Oplinger's opinion controlling weight and acknowledged her four hour limitation. However, the ALJ did not acknowledge Plaintiff's statement that she had to "[w]rite, type or handle small objects" for six hours a day. It is seemingly inconsistent for the ALJ to have found that Plaintiff could perform her past relevant work, which required six hours of work activity, when Plaintiff's treating physician stated that she could only perform four hours of such activity prior to the onset of symptoms.

Unfortunately, although the ALJ's opinion is well written and thorough in many respects, the ALJ did not provide an adequate explanation with respect to this issue so that this Court

could say that the ALJ's finding is supported by substantial evidence. There is a discrepancy with the ALJ's finding that Plaintiff could perform her past relevant work, which required six hours of activity, and Dr. Oplinger's opinion, which was that Plaintiff could perform four hours of activity before the onset of left eye strain and headache. It is unclear how severe Plaintiff's symptoms are after four hours and the ALJ cannot rely on this ambiguity in finding that Plaintiff is capable of performing her past relevant work. Accordingly, remand is ordered.[2]

Plaintiff makes an additional argument that the ALJ failed to expressly consider whether Plaintiff would be able to perform the functional demands and job duties of the financial information services operator job as ordinarily required by employers throughout the national economy. (Dkt. No. 5 at 27-28, citing *Jock, Jasinski*, and SSR 82-61.) The caselaw and SSR 82-61 clearly state that this analysis is not necessary if the ALJ found that Plaintiff could do the specific job as Plaintiff previously performed it. Thus, because the ALJ so found, he did not need to expressly consider whether Plaintiff could perform the same kind of work as it is customarily performed throughout the economy. Upon remand, the Court is confident that should the ALJ find it necessary to consider this alternative argument, he will do so.

### 2.     Office Assistant

Plaintiff contends that Defendant erred in finding that Plaintiff's former job as an office assistant constituted past relevant work. (Dkt. No. 5 at 23-28, Dkt. No. 15.) Defendant responds that the ALJ properly determined that Plaintiff could perform her past relevant work as an office assistant. (Dkt. No. 11 at 9-13.) This argument turns on what the Regulations consider past

---

[2]     It perhaps is telling that the Defendant did not respond to Plaintiff's argument on this point.

relevant work to be.

20 C.F.R. § 404.1560(b) defines past relevant work as "work that you have done within the past 15 years, that was substantial gainful activity and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b) (2006). Furthermore, the Regulations state that "work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier)" is "usually" not considered. 20 C.F.R. § 404.1565(a) (2006). SSR 82-62 provides that "[w]hen deciding whether a claimant is disabled under title II or title XVI , the 15-year period is generally the 15 years prior to the time of adjudication at the initial, reconsideration or higher appellate level."[3] SSR 82-62. It is the fifteen

---

[3] Courts have interpreted this fifteen year period to run from different dates. For example, some courts have interpreted the fifteen years to be the period prior to the ALJ's decision or the date last insured, if earlier. *See Foxman v. Barnhart*, 157 Fed. Appx. 344 (2d Cir. 2005) ("Under the regulations, past relevant work includes work activity performed within fifteen years of the date of the ALJ's decision, or the date last insured, if earlier"); *Naegele v. Barnhart*, 433 F. Supp. 2d 319 (W.D.N.Y. 2006) ("Here, the 15-year retrospective period began on the date of the ALJ's decision, August 27, 2003."); and *Lyons v. Barnhart*, No. 03-47-B-W, 2004 WL 202837, at *2 n.3 (D. Me. Jan. 30, 2004) ("For purposes of SSD claims, the fifteen-year period is measured backward from the date a claimant's insured status expired, if earlier than the date of adjudication of the claim.").

Other courts have interpreted the fifteen year period to be measured backward from Plaintiff's alleged onset date. *See Wynn v. Schweiker*, 558 F. Supp. 617 (W.D. Mo. 1983) ("Under the Secretary's own regulations, work experience done 15 years or more before the date of alleged disability is not generally considered relevant.") and *Rose v. Sec'y of Health and Human Servs.*, 2 F.3d 1151 (6th Cir. 1993) (where the Sixth Circuit noted that it was unclear from the "language of the regulation whether the fifteen-year period runs from the date of the onset of the alleged disability, the date of the application for benefits, or the date of the hearing before the ALJ" but assumed for the purposes of the appeal that the fifteen year period ran from the date of alleged disability.).

Still other courts have interpreted the fifteen years to be the period prior to the hearing date (*Dynko v. Barnhart*, No. 03-CV-3222, 2004 WL 2612260 (E.D. Pa. Nov. 16, 2004)), the date of the Appeals Council's decision (*Mastroni v. Bowen*, 646 F. Supp 1032 (D.C. 1986)), and the date of Plaintiff's application for benefits (*Nimick v. Sec'y of Health and Human Servs.*, 887 F.2d 864 (8th Cir. 1989)).

Perhaps the most persuasive opinion is that of the Sixth Circuit in the case of

year period which is the subject of disagreement between Plaintiff and Defendant.

Defendant argues that the fifteen year period should be measured from the "date of the initial denial of [Plaintiff's] disability claim." (Dkt. No. 11 at 9-10.) Under Defendant's argument, Plaintiff's claim was initially denied on January 28, 2003 (T. at 22-25) and the fifteen year period would run from January 28, 1988 through January 28, 2003. Accordingly, Plaintiff's office assistant job (which she performed from February, 1985 through September, 1988) would fall within that period and constitute past relevant work. On the other hand, Plaintiff contends that the fifteen year period should run from the date the ALJ adjudicated the claim. Accordingly, because the ALJ rendered his decision on September 8, 2004, the fifteen year period would run from September 8, 1989 until September 8, 2004, and thus the office assistant job does not constitute past relevant work because it is too remote. (Dkt. No. 15 at 1.)

Assuming that the fifteen year period runs backwards from the date of the ALJ's decision, as Plaintiff argues, this Court is not persuaded that Plaintiff's position as an office assistant is not past relevant work, even though she worked as an office assistant outside of the fifteen year period. Plaintiff herself described her duties as an office assistant, which included "[s]taff

---

*Smith v. Sec'y of Health and Human Servs.*, 892 F.2d 106 (6th Cir. 1989). In *Smith*, the Sixth Circuit held:
> By the very terms of this regulation, fifteen years is not a bright-line rule but a "guide" intended to help the Secretary avoid concluding that a claimant who has worked in a job requiring marketable skills retains marketable skills after the workplace has changed in its requirements. The regulation states that the Secretary does not "usually" consider work beyond the 15-year period to be applicable: giving the conventional meaning to the word "usually" means that the Secretary sometimes *does* look to work done before the 15-year period . . . . We therefore conclude that the 15-year cutoff of § 404.1565(a) is not mandatory . . . .

*Smith*, 892 F.2d at 109 (italics in original).

payroll, [c]harting instructor and nurse's notes, telephone" and also described her duties as a financial information services operator, which included: "Mostly computer operation, accounts receivable, accounts payable, prepared bi-weekly staff payroll, bank deposits, monthly statements, month-end financial reports." (T. at 83, 82.) These positions are substantially similar and it could be said that her position as a financial information services operator subsumed the duties she performed as an office assistant. In other words, Plaintiff's job as an office assistant could be found to constitute past relevant work because she was still performing those same duties as a financial information services operator, which clearly was past relevant work based upon the years that Plaintiff held that position. In addition, under the reasoning of the *Smith* case (*see supra* at footnote six), Plaintiff's previous job as an office assistant could be considered past relevant work. Using the fifteen year period to be a "guide," rather than a mandatory cutoff date, there is only one year between the date asserted by Defendant (September 8, 1989) and the time when Plaintiff last worked as an office assistant in September, 1988.

Even though the Court is not persuaded by Plaintiff's argument, remand has been ordered as set forth above. To the extent that the ALJ needs to reconsider this point,[4] the Court presumes he will do so.

### B. Did the ALJ Properly Assess Plaintiff's RFC?

Plaintiff argues that the ALJ correctly afforded controlling weight to the opinions of

---

[4] It is conceivable that on remand, the ALJ will not have to reconsider this point because he may clarify his reasoning regarding Plaintiff's ability to perform her past relevant work as a financial information services operator. Should he find that Plaintiff is indeed able to perform her past relevant work as a financial information services operator, he is not required to analyze whether Plaintiff is able to also perform her past relevant work as an office assistant. 20 C.F.R. § 404.1520(f) (2006), SSR 82-61.

treating physician Nancy L. Oplinger, M.D. (as contained in an affidavit dated August 25, 2004 (T. at 229-230)). However, Plaintiff contends the ALJ erred in ignoring Dr. Oplinger's restriction that Plaintiff has "a marked impairment of the ability to climb stairs, work at heights, avoid obstacles while walking, and operate machinery" (T. at 230). (Dkt. No. 5 at 21-22.) Plaintiff further contends that the ALJ committed reversible error in failing to explain why he did not adopt these additional restrictions. (*Id.*)

      The ALJ found that:

> [T]he claimant's only limitation is that of her right eye injury, which has left her with double vision and ptosis of the right eyelid (Exhibit 17F). Salvaging of useful vision is achieved by blocking the right eye with a patch or blinder. As such, the claimant is able to perform those activities that do not require depth perception, binocular vision or a useful field of vision to the right temporally. This residual functional capacity is based on Dr. Oplinger's Affidavit (Exhibit 17F) and her opinion that Plaintiff can read, write, sort, operate a keyboard, work with instruments, monitor video screens and do other activities for up to four hours in a workday without left eye strain and/or headache (Exhibit 17F). Dr. Oplinger's opinion is accorded controlling weight . . . . I, therefore, find that the claimant is able to satisfy the demands of medium exertion and can lift and/or carry up to 25 pounds frequently and 50 pounds on occasion. I concur, too, with Dr. Meyer's opinion – a physician for the state agency – that due to diplopia, the claimant should avoid heights and dangerous machinery (Exhibit 15F).

(T. at 18.)

      This Court is of the view that the ALJ implicitly **did** give controlling weight to Dr. Oplinger's restrictions of "a marked impairment of the ability to climb stairs, work at heights, avoid obstacles while walking, and operate machinery." (T. at 230.) This restriction probably was subsumed in the ALJ's finding that "claimant should avoid heights and moving machinery" and his finding that "due to her impaired vision, the claimant is unable to perform those activities

that require depth perception or binocular vision or a useful field of vision to the right temporally."  (T. at 19.)  However, since remand is being ordered, as discussed above, the ALJ shall review his RFC assessment of Plaintiff and determine explicitly whether the restriction of Dr. Oplinger that is at issue is adopted or not and the resulting impact on his RFC assessment.

### C. Did the ALJ Properly Apply the Grid?

Finally, Plaintiff argues that the ALJ improperly applied the Grid because Plaintiff has significant non-exertional impairments which significantly limit Plaintiff's ability to perform work, and therefore the testimony of a vocational expert was necessary in order to determine whether there are jobs that Plaintiff could perform.  (Dkt. No. 5 at 29-32.)  Defendant did not respond to this point but rather stated, in a footnote, "because substantial evidence . . . supports the ALJ's conclusion that Plaintiff could at least return to her past relevant work as an office assistant, it is unnecessary to continue to step five of the sequential evaluation . . . .  Thus, any errors made at that step are meaningless and do not warrant a remand."  (Dkt. No. 11 at 11 n.4.)

In the ordinary case, the Commissioner meets his burden at the fifth step of the evaluation process by consulting the Grid.  *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  "Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations."  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999).  Particularly, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments . . . .  Accordingly, where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment the

application of the grids is inappropriate." *Bapp*, 802 F.2d at 605-06. "In these circumstances, the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

It is important to note that the ALJ considered this point as an alternative argument. The ALJ had already considered the first four steps of the sequential evaluation and found that Plaintiff retained the RFC to perform her past relevant work and thus, was not disabled, ending the inquiry. 20 C.F.R. § 404.1520(a)(4)(iv) (2006). Upon remand consideration of the fifth step of the sequential evaluation might continue to be unnecessary.

Nonetheless, because the ALJ considered the point, the Court will briefly address it. The ALJ properly noted that the Grid is not strictly applied, if at all, when a claimant has nonexertional limitation(s), as in the case before him. (T. at 18.) Hence the ALJ turned to the inquiry regarding "whether the non-exertional limitation(s) significantly narrows the range of work that the claimant is capable of performing." (T. at 19.) The ALJ then used the Grid as a framework and applied Rule 203.07 and found that Plaintiff was not disabled. (*Id.*) Notably absent is the ALJ's explicit finding that Plaintiff's nonexertional limitation(s) did not significantly narrow the range of work that she was capable of performing. It is likely that this was an oversight and that the ALJ had this conclusion in mind but did not memorialize it in his decision. Furthermore, the Court is mindful that this was an alternative argument. Nonetheless, as remand has been ordered, as set forth above, if upon remand the ALJ reaches step five of the sequential evaluation, his decision should include discussion regarding whether Plaintiff's nonexertional impairments significantly diminish her work capacity beyond that caused by her exertional

impairment.  If necessary, the ALJ shall also procure the necessary vocational expert testimony.

### D. Whether Reversal and Remand Solely for the Calculation of Benefits Is Proper?

Remand solely for the calculation of benefits is warranted when there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d. Cir. 1999).  On the other hand, "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have . . . remanded to the [Commissioner] for further development of the evidence." *Id.* (citations and internal quotation marks omitted).  This is not a case where it would be appropriate to remand solely for the calculation of benefits.  This was a very close case and in many respects the ALJ's decision was well reasoned and thorough.  Remand is being ordered for clarification and further explanation by the ALJ with regard to certain of his findings.

**WHEREFORE,** it is hereby

**ORDERED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[5] for further proceedings consistent with the above.


Dated: July 26, 2007
       Syracuse, New York

_____
George H. Lowe
United States Magistrate Judge

---

[5] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).